IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NINESPOT, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JUPAI HOLDINGS LIMITED,<br>PUJI MEDIA HOLDINGS LIMITED, and<br>PUJI JUPAI ASSET MANAGEMENT,<br><br>　　　　Defendants. | Civil Action No. 1:18-cv-00144-RGA |

**MEMORANDUM**

Presently before me are Defendant Puji Jupai Asset Management's Motion to Dismiss, or in the Alternative, Strike Portions of First Amended Complaint (D.I. 105), Defendant Jupai Holdings Limited's Motion to Dismiss Plaintiff Ninespot, Inc.'s First Amended Complaint (D.I. 107), and Defendant Puji Media Holdings Limited's Motion Pursuant to Rules 12(b)(6) and 12(b)(7) to Dismiss Plaintiff's First Amended Complaint (D.I. 110). The Parties have fully briefed the issues. (D.I. 106, 108, 111, 117, 118, 119, 120, 121, 123). I heard oral argument on March 28, 2019. After full consideration of the briefing, the motions are resolved as follows.

**I.　BACKGROUND**

I summarized the facts and circumstances underlying this case in my July 30, 2018 Memorandum Order ("Order") that addressed Defendants' last round of pre-answer motions. (D.I. 102 at 1-3). As part of the Order, I granted Plaintiff's request for leave to amend its complaint. (*Id.* at 26). Plaintiff filed its First Amended Complaint ("FAC") on August 13, 2018. (D.I. 103).

This chart summarizes the claims of the original complaint, the Order, and Plaintiff's amended claims as pled in the FAC:

| Original Complaint (D.I. 1) | Ruling on Motion to Dismiss (D.I. 102) | First Amended Complaint (D.I. 103) |
|---|---|---|
| (1) Breach of Contract (Puji)[1] | Maintained | (1) Breach of the BCA[2] (Puji) |
| (2) Breach of Contract (PJ) | Maintained | (2) Breach of the SPA[3] (All Defendants) |
| (3) Breach of Contract (Jupai) | Dismissed | |
| (4) Breach of Implied Covenant of Good Faith and Fair Dealing (All Defendants) | Maintained: Puji Dismissed: Jupai and PJ | (3) Breach of Implied Covenant of Good Faith and Fair Dealing (Puji and Jupai) |
| (5) Intentional Interference with Contractual Relations (Puji and Jupai) | Dismissed | X |
| (6) Intentional Interference with Prospective Economic Relations (Puji) | Dismissed | X |
| (7) Breach of Fiduciary Duty (Puji) | Dismissed | X |
| (8) Intentional Misrepresentation (All Defendants) | Maintained: Puji Dismissed: Jupai and PJ | (4) Intentional Misrepresentation (Puji and Jupai) |
| (9) Violation of Delaware Deceptive Trade Practices Act (All Defendants) | Dismissed | X |
| | | (5) Aiding and Abetting Fraud (Jupai) |

Defendants filed the present motions to dismiss on September 10, 2018.

---

[1] I refer to Defendant Puji Media Holdings Limited as "Puji," Defendant Jupai Holdings Limited as "Jupai," and Defendant Puji Jupai Asset Management as "PJ."
[2] Business Collaboration Agreement (D.I. 103-1).
[3] Series B Preferred Stock Purchase Agreement (D.I. 103-4).

## II. LEGAL STANDARDS

*A. Rules 12(b)(6) and 9(b)*

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

Federal Rule of Civil Procedure 9(b) requires that a complaint must state with particularity the circumstances constituting fraud or mistake. Conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b). Complaints that fail to plead fraud or false claims grounded in fraud with the requisite particularity are dismissed in the same manner as a dismissal under Rule 12(b)(6). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

*B. Rule 12(b)(7)*

Under Federal Rule of Civil Procedure 12(b)(7), a defendant may move to dismiss a case for a plaintiff's failure to join a required party pursuant to Rule 19. To determine whether the

3

case must be dismissed, the Court must first decide whether the party is "necessary" within the meaning of Rule 19(a). *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). An absent party is necessary if either, "(1) the present parties will be denied complete relief in the absence of the party to be joined, or (2) the absent party will suffer some loss or be put at risk of suffering such loss if not joined." *Koppers Co. v. Aetna Cas. & Sur. Co.*, 158 F.3d 170, 175 (3d Cir. 1998). If the party is necessary under Rule 19(a) and joinder is feasible, the party is required and must be joined. If the absent party is necessary and cannot be joined, the Court must next determine whether the party is considered "indispensable" under Rule 19(b). *Id.* Whether a party is indispensable is determined by balancing:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>   (A) protective provisions in the judgment;
>   (B) shaping the relief; or
>   (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). If an absent party is indispensable, the Court must dismiss the action. *Gen. Refractories Co.*, 500 F.3d at 312.

### III. DISCUSSION

*A. Defendant Puji's Motion to Dismiss Pursuant to Rule 12(b)(7) for Failure to Join Indispensable Parties*

Puji argues that I should dismiss this case pursuant to Rule 12(b)(7) for Plaintiff's failure to join Draper Triangle Ventures III, LP and Draper Triangle Ventures Ohio III, LP (collectively "Draper entities"). (D.I. 111 at 14-17). The SPA lists the Draper entities among "purchasers" that were required to make initial investments in Plaintiff. (*See* SPA, Exh. A).

4

As an initial matter, Puji's motion is timely. Rule 12(g) provides, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. Rule. Civ. P. 12(g)(2). Plaintiff argues that Puji's motion, its third motion to dismiss in this case, is not timely. (D.I. 117 at 16; *see* D.I. 36, 79, 110). Puji responds that Plaintiff added new allegations that Puji breached the SPA in the FAC. (D.I. 123 at 8). Plaintiff's initial pleading only asserted breach of the BCA as to Puji, a document that the Draper entities did not sign. (*Id.*). Thus, Puji argues, the Rule 12(b)(7) motion was not available to it until the latest filing. I agree. Although other Parties could have raised this issue earlier, this motion to dismiss is the first opportunity Puji has had to argue the point. Thus, I will consider the substance of whether the Draper entities are required parties to this litigation.

The Draper entities are not required parties under Rule 19(a). In the Third Circuit, co-obligors under a contract are not necessarily required parties when the obligors' obligations are separate. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405-06 (3d Cir. 1993). For a court to deem a party "required," there must be an additional reason the court will be unable to provide complete relief to the present parties. The mere possibility that the case may create "persuasive precedent" in a subsequent litigation is not a sufficient reason to require joinder. *Id.* at 407.

The SPA separately defines each of the contracting parties' obligations. PJ was to buy 767,971 shares of Plaintiff for a purchase price of $1.5 million and the Draper entities were to buy 85,331 shares for $166,668.51. (SPA, Exh. A). Defendant Puji argues it is impossible to know what impact the Draper entities' money, had it been provided to Plaintiff as required, may have had on Plaintiff. (D.I. 111 at 15). That may be true. However, it has no bearing on my

5

ability to fashion complete relief. Defendants can argue at trial that the Draper entities' contribution would have prevented or diminished Plaintiff's harm. That argument does not require the Draper entities' presence.

Puji argued at oral argument that the Draper entities may pursue legal action against Puji if Puji is found liable in this case. As there is no evidence or argument that the Draper entities made their SPA-required contributions, I find Puji's premise highly unlikely. Regardless, the questions at the center of this case relate only to Defendants' actions leading up to and following the SPA. I can resolve those questions without the Draper entities. Thus, the issue of whether the Draper entities may pursue a case against Puji does not amount to more than a fear of persuasive precedent in a subsequent litigation and does not impact my ability to fully resolve this case. Accordingly, I will deny Defendant Puji's motion to dismiss under Rule 12(b)(7).

*B. Defendants' Motions to Dismiss Counts Related to Breach of the SPA*

In the FAC, Plaintiff amended Count Two to include new claims against Defendants Jupai and Puji for breach of the SPA and Side Letter Agreement. (D.I. 103 at ¶¶ 146-53). The FAC notes that Jupai and Puji are not signatories to those agreements but alleges that they are bound as "Affiliates" based on the Parties' understanding of the Agreement.[4] (*Id.* at ¶¶149-50).

Defendants Puji and Jupai can only be held liable under the SPA if "Affiliates" of the SPA are bound by the contract. The number of shares each Purchaser was obligated to purchase at the "Initial Closing" is set out in SPA Exhibit A. PJ is one such Purchaser and a signatory of

---

[4] The SPA defines "Affiliate" as:
> with respect to any specified Person, any other Person who, directly or indirectly, controls, is controlled by, or is under common control with such Person, including, without limitation, any general partner, managing member, officer or director of such Person or any venture capital fund now or hereafter existing that is controlled by one or more general partners or managing members of, or shares the same management company with, such Person.

(SPA at § 1.4(a)).

the SPA. It is therefore obligated under the agreement. The SPA does not, however, mention Affiliates in connection with the Initial Closing. (SPA at ¶ 1.1(b)). SPA Section 1.1(c) addresses subsequent stock purchases and provides that the Purchasers "together with their respective Affiliates" commit to purchase additional shares. The "Side Letter Agreement," a document that sets out a date for the Initial Closing and a schedule for subsequent purchases, also mentions Affiliates. (*See* D.I. 103-5). Neither the SPA nor the Side Letter agreement is signed by Puji or Jupai.

In the July 30th, 2018 Order, I found that Jupai is sufficiently closely related to the SPA to be bound by the SPA's Delaware forum selection clause. (D.I. 102 at 6-8, 20 (applying Delaware's three-part test to determine whether a non-signatory party is bound by a contract's forum selection clause)). In doing so, I noted that Jupai was a party to the term sheet, was an "Affiliate" within the definition set out in the SPA, and was involved in negotiating the structure of the investment. (*Id.* at 8). The FAC adopts the position that Jupai's and Puji's status as PJ's Affiliates means they are not only closely related, but are contractually bound by the SPA as a whole. (D.I. 103 at ¶ 150).

Defendant Puji argues that California law should apply to evaluating the sufficiency of Count Two. (D.I. 111 at 6). Its position is consistent with the Side Letter Agreement's choice of law provision. (D.I. 103-5). Under California law, contracting parties must freely communicate mutual consent. Cal. Civ. Code §§ 1550, 1556. "[A] party cannot bind another to a contract simply by so reciting in a piece of paper. It is rudimentary contract law that the party to be bound must first accept the obligation." *Mitsui O.S.K. Lines, Ltd. v. Dynasea Corp.*, 72 Cal. App. 4th 208, 212 (1999). Defendant argues that Plaintiff cannot meet this standard and has not pled facts to support a plausible claim of express mutual consent. (D.I. 111 at 6-9).

7

Plaintiff responds that, unlike the Side Letter Agreement, Delaware law controls the SPA. (D.I. 117 at 9-10). SPA § 6.3 contains a Delaware choice of law provision. In Delaware, "a valid contract exists when (1) the parties intended that the instrument would bind them, . . .; (2) [the] terms are sufficiently definite; and (3) the putative agreement is supported by legal consideration." *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018). A party's intent to be bound may be established via a showing that the party adopted the agreement. *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 348 (Del. Ch. 2003). "The contract itself, however, must contemplate that non-signatories may adopt it." *Id.* at 344.

Regardless of the applicable law, Puji and Jupai cannot be held liable as parties to the SPA. Plaintiff's claim fails under California law as Plaintiff has failed to allege that Puji and Jupai communicated consent to be bound by the SPA. (*See* D.I. 103 at ¶¶ 146-53). Plaintiff's claim also fails under Delaware law as the SPA does not contemplate that non-signatories can adopt it. SPA § 6.2 states:

> Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

Far from contemplating third-party adoption, this provision in the SPA places an express limit on the contracting parties' understanding of who was bound by the agreement. Moreover, this language strongly indicates that Puji and Jupai did *not* intend to be bound by the agreement. Thus, Plaintiff cannot meet the Delaware law standard for third party adoption of a contract and does not meet the Delaware law requirement that Jupai and Puji intended to be bound by the SPA. Accordingly, as Plaintiff fails to state a claim against Puji and Jupai under either California or Delaware law for breach of the SPA, I will dismiss Count Two as to them. I will

8

also dismiss Count Three, breach of implied covenant of good faith and fair dealing, in its entirety as to Jupai and to the extent it is based on the SPA as to Puji.

PJ also moves to dismiss or strike portions of Count Two related to allegations of breach of the Side Letter Agreement. (D.I. 105). As I have already found that Count Two states a claim against PJ, I will not dismiss it. (D.I. 102 at 14-15). I also will not strike the new allegations. The Side Letter Agreement, which purports to provide the closing date, is at a minimum relevant to this action. (D.I. 103-5). Whether the Side Letter Agreement bears on PJ's liability is a question that is more appropriately resolved following fact discovery.

*C. Defendant Jupai's Motion to Dismiss Count Four: Intentional Misrepresentation*

Jupai moves to dismiss Count Four, arguing that Plaintiff has failed to plead the claim as to it with sufficient particularity to meet Rule 9(b)'s standard. (D.I. 108 at 13-16). In the FAC, Plaintiff alleges that Jupai is liable as principal for Puji's intentional misrepresentations. (D.I. 103 at ¶¶ 161-68). I have already found that Plaintiff's claim against Puji is sufficient. (D.I. 102 at 23). Thus, the only question is whether Plaintiff has sufficiently pled an agency relationship between Jupai and Puji.

In the Third Circuit, Rule 8 sets a low bar for pleading an agency relationship. This is because "discovery is necessary when an agency relationship is alleged" and, thus, less is required for "allegations of agency to survive a facial attack." *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 808 (3d Cir. 2003). A plaintiff must, however, plead more specific facts than Rule 8 requires when the underlying claim is fraud. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) ("[W]hen the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim."); *Abels v. Farmers Commodities*

9

*Corp.*, 259 F.3d 910, 916 (8th Cir. 2001) ("[A] plaintiff seeking to hold a principal liable for an agent's fraud must plead not only fraud but also agency with particularity.").

Plaintiff has met its burden.[5] It alleges that from Jupai's conduct on specific occasions it was evident that Jupai was relying on Puji as an agent, that Puji acted as an intermediary between Plaintiff and Jupai, and that Jupai accepted the deal that Puji negotiated. (D.I. 103 at ¶¶ 50-57, 78, 107-08). These factual allegations of an agency relationship are sufficiently particular to survive a motion to dismiss under Rule 9(b)'s standard. Thus, I will deny Jupai's motion to dismiss Count Four.

*D. Defendant Jupai's Motion to Dismiss Count Five: Aiding and Abetting Fraud*

Jupai argues that Plaintiff fails to state a claim of aiding and abetting fraud under Rule 9(b) because it fails to sufficiently allege actual knowledge and substantial assistance. (D.I. 108 at 16-19). In California,[6] a party may be liable for aiding and abetting fraud if it "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 846 (1994).

Plaintiff has sufficiently alleged knowledge to withstand a motion to dismiss for failure to state a claim under Rule 9(b). Under Rule 9(b), knowledge may be alleged generally. Allegations of knowledge must, nevertheless, be accompanied by specific factual allegations that plausibly support an inference of knowledge. *See Pfizer Inc. v. Sandoz Inc.*, 2013 WL 5934635, at *6 (D. Del. Nov. 4, 2013). The FAC consistently pleads Jupai's involvement with Puji and the

---

[5] Jupai mistakenly argues this motion under the California pleading standard. (D.I. 14-15). It is well established, however, that "[t]he manner and details of pleading in the federal courts are governed by the Federal Rules of Civil Procedure regardless of the source of substantive law to be applied in the particular action." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1204 (3d ed.).

[6] The Parties do not dispute that California law applies to the tort claims in the FAC.

underlying deal negotiations. Such allegations are sufficient, at the motion to dismiss stage, to support an inference of Jupai's knowledge of Puji's alleged misrepresentations.

As to the requirement of pleading substantial assistance, Jupai argues that Plaintiff's allegations are insufficient based on the insufficiency of Plaintiff's agency allegations. (D.I. 121 at 10). I find that Plaintiff has sufficiently plead an agency relationship between Puji and Jupai. Thus, as I find Plaintiff adequately pleads knowledge and substantial assistance, I will deny Jupai's motion to dismiss Count Five.

## IV. CONCLUSIONS

For the foregoing reasons, the Defendants' motions are resolved as follows:

1. Defendant Puji Jupai Asset Management's Motion to Dismiss, or in the Alternative, Strike Portions of First Amended Complaint (D.I. 105) is **DENIED**.

2. Defendant Jupai Holdings Limited's Motion to Dismiss Plaintiff Ninespot, Inc.'s First Amended Complaint (D.I. 107) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Count Two (breach of the SPA) and Count Three (breach of the implied covenant of good faith and fair dealing) are dismissed as to Jupai.

3. Defendant Puji Media Holdings Limited's Motion Pursuant to Rules 12(b)(6) and 12(b)(7) to Dismiss Plaintiff's First Amended Complaint (D.I. 110) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Count Two (breach of the SPA) is dismissed as to Puji and Count Three (breach of the implied covenant of good faith and fair dealing) is dismissed as to Puji to the extent it is based on breach of the SPA.